UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

— — —

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                     Case No. 21-20405

NOE GARZA,                Hon. Matthew F. Leitman

        Defendant.
_____/

MOTION TO SUPPRESS

BEFORE THE HONORABLE MATTHEW F. LEITMAN
United States District Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
Monday, July 25, 2022

APPEARANCES:

For the Plaintiff:     JULES M. DEPORRE
                      UNITED STATES ATTORNEY'S OFFICE
                      600 Church Street
                      Flint, MI 48502
                      (810) 766-5177

For the Defendant:    CHARLES O. LONGSTREET, II
                      LONGSTREET LAW FIRM, PLLC
                      18971 Livernois
                      Detroit, MI 48221
                      (313) 288-0103

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Federal Official Court Reporter*
*(313) 234-2612 • robert_smith@mied.uscourts.gov*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

TABLE OF CONTENTS

MATTER                                                          PAGE

MOTION TO SUPPRESS (Continuation)
Discussion with Mr. Longstreet...................... 4
Discussion with Mr. DePorre.........................16
Discussion with Mr. Longstreet......................20
Ruling by the Court.................................22

 1   Detroit, Michigan

 2   Monday, July 25, 2022

 3   at about 11:10 a.m.

 4                              —   —   —

 5          THE CASE MANAGER:  All rise.

 6          The United States District Court for the Eastern

 7   District of Michigan is now in session, the Honorable

 8   Matthew F. Leitman, United States District Judge, presiding.

 9          You may be seated.

10          The Court calls Case No. 20-20405, United States of

11   America v. Noe Garza.

12          Counsel, please state your appearances on the

13   record.

14          MR. DePORRE:  Good afternoon -- good morning, Your

15   Honor.  Jules DePorre on behalf of the government.

16          MR. LONGSTREET:  Attorney Charles Oliver

17   Longstreet, II, P68205, appearing on behalf of Noe Garza who

18   is seated to my left.

19          THE COURT:  Good morning.  Welcome to both of you.

20   Please be seated.

21          We're here this morning for final argument on a

22   Motion to Suppress physical evidence that Mr. Longstreet

23   filed.

24          Just to get us all back on the same page here,

25   Mr. Longstreet originally filed the motion.  We then held two

*Motion to Suppress • July 25, 2022*

**4**

```
 1    days of evidentiary hearing on the motion, and then I asked
 2    for supplemental briefs.  The parties -- or counsel filed
 3    those, and they were very helpful.  After I read them, I had
 4    a few questions, and so I asked to convene this hearing.
 5              Mr. Longstreet, do you mind coming to the podium.
 6              All right.  Mr. Longstreet, I have a few questions
 7    for you, but before I ask my questions I want to thank you
 8    for the really fine work you did in this case.  Your briefing
 9    and the way you handled the examination really helped me get
10    my head around some of these issues, so I want to thank you
11    for your fine work.
12              MR. LONGSTREET:  Thank you.
13              THE COURT:  When I read your supplemental brief,
14    Mr. Longstreet, which were very helpfully in trying to put a
15    bow on everything for me, it occurred to me once again that
16    your position here seems to spring from the premise that in
17    order to justify the entry into the vehicle while it was in
18    the Meijer parking lot, and in order to justify any contact
19    with Mr. Garza, that the initial contact with him -- the
20    initial arrest had to be supported by probable cause and
21    valid.  Do I understand that correctly?
22              MR. LONGSTREET:  That is accurate.
23              THE COURT:  Okay.  One of the things that occurred
24    to me when I was rereading the transcript is if you take the
25    officer's contact with Mr. Garza completely off the table,
```

*Motion to Suppress • July 25, 2022*

1    what I want to ask is, why isn't there a series of events

2    that justifies everything that happened here?  And let me --

3    that's kind of the broad picture that I want to paint for

4    you, but I want to try to be more specific.

5            What I understand is that your concern that the

6    description that the officers got from Ms. Monpos (phonetic)

7    and the Meijer folks did not match Mr. Garza, and you did an

8    excellent job of bringing that point out, and bringing out

9    your argument that for that reason and because the officers,

10   in your view, had no reason to suspect Mr. Garza of doing

11   anything, they didn't have a basis to speak to him or put

12   hands on him.  I understand that argument.

13           But if you set that aside and you do the

14   chronology, what occurs to me is the officers receive a

15   report from Ms. Monpos of the suspected shoplifting happening

16   by a white person wearing a sweat outfit and with a backpack,

17   and that the white person with the sweat outfit and the

18   backpack then goes and gets into a white -- is it a

19   Grand Prix?

20           MR. LONGSTREET:  I believe it is a white

21   Grand Prix.

22           THE COURT:  Okay.  So are you and I on the same

23   page at this point?  Do you agree with that?

24           MR. LONGSTREET:  We are.

25           THE COURT:  Okay.

1      MR. LONGSTREET:  I'd have to read the transcript to

2  be for sure, but I would presume the Court is correct.

3      THE COURT:  That wasn't even the hard question.  I

4  assumed we would be on the same page there.  Okay.

5      So as I'm reading through the chronology of the

6  events, the first thing that happens when the officers

7  approach the car is that they have this interaction with

8  Mr. Garza.  And for the sake of my discussion with you right

9  now I want to put that totally to the side.

10      But before the officers enter the car they notice

11  the second person in the car, Hutchins.

12      MR. LONGSTREET:  In the back seat.

13      THE COURT:  And along with Hutchins in the back

14  seat is a backpack.  Are you with me so far?

15      MR. LONGSTREET:  I'm with you so far.

16      THE COURT:  All right.  Then they take Hutchins out

17  of the car, still before they've entered the car.  And I --

18  you can take my word for it, that's -- in terms of reading

19  the transcript, they get Hutchins out of the car before they

20  start searching the car.

21      MR. LONGSTREET:  That's correct.

22      THE COURT:  And on page 37 of the transcript what

23  is testified to is that when they get Hutchins out of the

24  car -- I'm on page 37 of the transcript, this is Docket

25  No. 22, pageID.112, Hutchins admits that he was stealing from

1    the store, that he had merchandise still in the backpack in

2    the vehicle, identified Garza as a drug dealer, and stated

3    that there was a firearm in the white Grand Prix.

4            Based on the information from Hutchins that I'm a

5    thief and there's stolen merchandise in the backpack in the

6    car, doesn't that give the officers a basis under the vehicle

7    exception to search the car on the basis that they have

8    probable cause to believe that evidence of a crime will be

9    found in the vehicle?

10           MR. LONGSTREET:  They have a right to search the

11   backpack.

12           THE COURT:  Okay.  So they have a right to enter

13   the vehicle to get the backpack, right?

14           MR. LONGSTREET:  To get the backpack, yes, because

15   that's the item that they would believe had contraband in it.

16   To search the entire vehicle itself when they know who the

17   suspect is and they know the suspect is in the back seat and

18   they know the person is in possession of a backpack in the

19   back seat of the vehicle, I don't believe that gives them a

20   total right to search the entire vehicle for contraband when

21   they know specifically the items that were being stolen are

22   inside of a backpack and being possessed by a white person.

23           THE COURT:  But remember Hutchins says two things.

24   He says there's merchandise in the backpack in the vehicle,

25   and Garza's a drug dealer with a firearm.  Don't they have

1   probable cause to search for a firearm possessed by somebody

2   who is identified as a drug dealer?

3          MR. LONGSTREET:  I don't believe that those would

4   be articulable facts or circumstance that would lead a

5   reasonable person to believe that Mr. Garza is the actual

6   person that's possessing a firearm because a person who is

7   suspected of stealing then says he's a drug dealer and had a

8   firearm.  And the firearm isn't discovered until the second

9   search, and I believe, if I'm not mistaken, those comments

10   are made by the co-defendant or the co-arrestee at the police

11   station sometime later, not exactly at the scene is what I

12   recall the circumstances to be.

13          THE COURT:  On page 40 of the transcript what

14   Officer Fisher testifies to -- he again describes

15   Mr. Hutchins' statement, and he describes how Hutchins'

16   statement led him, Fisher, to enter the car, and he refers to

17   Hutchins' statement as that Mr. Garza was a drug dealer and

18   that there was a gun in the car.

19          Now, I understand your argument that maybe there's

20   a reason to disbelieve a drug dealer, maybe there's reasons

21   to question his credibility and -- and perhaps reasons not to

22   believe him beyond a reasonable doubt at that moment.  But

23   when a known person who you have in custody tells you that

24   the other person in the car is a drug dealer and there's a

25   gun in the car, which is what Fisher describes on page 40 of

1  the transcript, doesn't that at least rise to the level of

2  probable cause under the vehicle exception to the search

3  warrant requirement to search the vehicle for a gun?

4  MR. LONGSTREET:  No, because it's not really

5  moveable at the time because they have control and seize of

6  the person, the car can't go anywhere, so at that point I

7  think they would need a warrant.

8  THE COURT:  But you know -- I mean, it seems to me

9  settled that the vehicle exception does not rest on lack of

10  movability.

11  MR. LONGSTREET:  I'm sorry.

12  THE COURT:  Your point is that you just made -- let

13  me take a step back and see if we can agree at bite-sized

14  chunks.

15  MR. LONGSTREET:  Okay.

16  THE COURT:  Do you disagree that when Hutchins says

17  to the officers on the scene, Garza's a drug dealer and

18  there's a gun in the car, do you disagree that that is

19  sufficient to establish probable cause to search the car?

20  MR. LONGSTREET:  I do disagree that that is

21  probable cause to search the vehicle at that point.

22  THE COURT:  And your basis is what, that it could

23  be a self-serving statement or there's reasons to doubt him?

24  MR. LONGSTREET:  That too, and also, it's my

25  understanding -- and I know I didn't brief this particular

*Motion to Suppress • July 25, 2022*

```
 1   issue but I'm just speaking from my legal knowledge and
 2   experience, that an officer can only make arrest for a felony
 3   if the felony is committed within his presence.  I don't
 4   think the fact that somebody says, hey, that guy has a gun
 5   gives him the right to actually go inside of the vehicle and
 6   search the vehicle because somebody else says that this guy
 7   is a drug dealer and has a gun.  I don't believe that's
 8   articulable facts and circumstances that would lead a
 9   reasonable officer to believe that my client was in
10   possession of an actual firearm.
11           And it is again a self-serving statement made by a
12   third party who was actually stealing inside of the store.  I
13   just don't think at this point based on the vehicle exception
14   that that would give the officers rise to go inside of the
15   vehicle and search the entire vehicle for a firearm because I
16   don't believe that the simple statement made by another
17   person gives rise to a search of a vehicle in its entirety.
18           And even with that, the Court -- I would ask the
19   Court to recognize that even after that first search and even
20   after the statement being made, no firearm was found until
21   after -- a few -- or many hours later after a second
22   statement was made at a police station where they go back to
23   the --
24           THE COURT:  Look, I don't want to hide the ball.
25   Let me walk through how with how I kind of see the path and I
```

*Motion to Suppress • July 25, 2022*

1    would like you to comment at each step of the path.  Let me

2    first give you the whole path and then we'll back up.

3              MR. LONGSTREET:  Very good.

4              THE COURT:  When I reread this transcript and

5    reread the case law, it occurs to me that it goes like this.

6    Separating out their interaction with Garza, which you raise

7    some serious questions about, that you have the interaction

8    with Hutchins before the search starts and Hutchins says

9    Garza's a drug dealer and there is a gun in the car.  And it

10   strikes me that that is probable cause to search the vehicle

11   for the gun.  I understand your argument to the contrary, but

12   my inclination is that that is probable cause to search the

13   car both for the items that Hutchins talked about having

14   stolen and to search for a gun.

15             That when they start searching the car, they find

16   all sorts of stuff that is evidence of possible crimes; the

17   Suboxone, the oil or whatever it is they find, and I think it

18   was ammunition.  And at that point once they know that Garza

19   is the driver of the car and they find this contraband in the

20   car, then it strikes me that they do have a basis to look up

21   Garza, figure out who he is, figure if there's a valid

22   license plate and if he has a license and if he has a

23   warrant.

24             They then do that and that gives them a basis to

25   take Garza into custody.  They find the warrant, they find

1    the contraband in his car, and all of that then gives them a

2    basis to not let him drive the car away, to impound the car,

3    so the car is lawfully in custody. The car is taken then to

4    the impound yard. They then hear from this fellow, the third

5    suspect, Mr. Allen, who tells them during the interview that

6    he believes that Garza may have had a gun, and that he saw

7    Garza open the hood of the car and put something in the

8    engine compartment.

9            So then when you put Mr. Allen's statement combined

10   with Mr. Hutchins' statement, Hutchins says he did have a

11   gun, Allen isn't certain but suspects that he might and saw

12   him open up the engine compartment. When you put that

13   together, I believe there is continuing probable cause to

14   search this car for a gun.

15           And the Supreme Court's decision in *Florida v.*

16   *Meyers* says that even when you've impounded a car, towed it

17   to a lot, locked it up and taken the keys, that eight hours

18   later if there is probable cause to search the car the police

19   can come back and search it, and that that's exactly what

20   happened here.

21           So my inclination is that when you follow the

22   evidence that way there is an appropriate basis for each step

23   of the way, and I wanted to hear your thoughts in terms of

24   responding to that.

25           MR. LONGSTREET: If you look at it in that

 1    particular way as it being a continuation of the original

 2    stop then there is no argument the defense can really make

 3    because it's a continuation argument.  It would seem to be

 4    the Court is taking a transactional approach and it being one

 5    transaction on that the establishment of probable cause from

 6    Hutchins, and they get more information on top of that

 7    probable cause, simply means that the Court is making the

 8    statement that this is a transactional probable cause, that

 9    it continued from the original assertation of probable cause

10    from statements made by Hutchins, that probable cause was

11    just duped by a second statement, and with that approach I

12    don't think there is really anything that the defense really

13    could say.

14            THE COURT:  Tell me where that approach is wrong.

15    Let's say --

16            MR. LONGSTREET:  I can't.

17            THE COURT:  Well, what I'm saying is hypothetically

18    let's say in ten minutes I give that as my ruling and I deny

19    the motion, tell me what your appeal brief to the

20    Sixth Circuit would say.  It would say Leitman got it wrong

21    here, here, here.  Where is that wrong?

22            MR. LONGSTREET:  I would need to do legal research,

23    but from my legal experience and ethically I cannot make

24    converse arguments that I know aren't true, so ethically I

25    have to say the Court may be right in that particular

*Motion to Suppress • July 25, 2022*

1    position it takes.

2          THE COURT:  Is there anything that I said about my

3    course of reasoning that strikes you as obviously wrong or

4    not consistent with this record?

5          MR. LONGSTREET:  Well, I disagree with the Court in

6    that Hutchins' statement gives them probable cause to search

7    inside the vehicle.  I think it gives him probable cause to

8    search the backpack, not the vehicle itself, and it doesn't

9    give him probable cause to arrest Mr. Garza, and I stand on

10   that position.

11         But if the Court is taking the transactional

12   approach in that it believes that the statement is probable

13   cause and that probable cause is expounded on by the

14   statement of the second defendant, if the Court is taking

15   that approach, then there is no legal precedence that I can

16   think of at this point without doing legal research to argue

17   the contrary, then I'm under the ethical duty to concede.

18         THE COURT:  I'm not asking you to concede.  I'm

19   just thinking out loud, and I appreciate your candor and how

20   seriously you take your ethical obligations.  I'm just -- I

21   wanted to think out loud with you and see if there is

22   anything -- and you've shared the one point where you think

23   I've clearly diverged from your view.

24         Is there anything else that you would want to say

25   about my path through this?

```
 1         MR. LONGSTREET:  I would just think that the arrest
 2   of Hutchins would only give the officers at maximum an
 3   ability to search the wingspan of Hutchins, but I don't think
 4   it gives them probable cause just the fact that he says
 5   there's a firearm inside the car or Garza's a drug dealer and
 6   we were stealing for him and he has a gun inside the car does
 7   not give them probable cause to search the entirety of a
 8   vehicle for a firearm based on self-serving statements of a
 9   co-defendant.  I just don't believe that to be the case.
10         THE COURT:  Okay.  I want to ask Mr. DePorre a few
11   questions but I want to make sure I give you an opportunity
12   to share any other thoughts that you want to share at this
13   point.
14         MR. LONGSTREET:  Umm --
15         THE COURT:  Here's what you don't need to convince
16   me of at this point.  You don't need to convince me at this
17   point that there was a basis to arrest or approach Mr. Garza
18   the moment the officers did contact him.  You know, your
19   argument is they were wrong in grabbing him out of car.  You
20   don't need to convince me of that because, again, the way I
21   see it, this doesn't turn on whether that was lawful.  You
22   also don't need to convince me that the last search can't be
23   upheld as an inventory search because I don't think that's
24   necessary to get to the way I see this thing ending up.
25         So with kind of clearing away that underbrush, is
```

 1 | there anything else that you want to share with me?

 2 |       MR. LONGSTREET: May I have a moment to ponder?

 3 |       THE COURT: Sure. In fact, you can sit down, and I

 4 | can ask Mr. DePorre my questions, and then I'm happy to hear

 5 | from you again.

 6 |       MR. LONGSTREET: Very good.

 7 |       THE COURT: Okay. Thank you.

 8 |       Mr. DePorre, in your papers you highlight

 9 | Mr. Hutchins' statements to Office Fisher before the search

10 | happens, but Mr. Longstreet says that those statements don't

11 | establish probable cause to search the vehicle for a gun.

12 | What do you think?

13 |       MR. DePORRE: I think that those statements --

14 | there are really two statements that Mr. Hutchins makes with

15 | respect to Mr. Garza. The first is that he's a drug dealer.

16 | When the officers approach the car to search it, they see

17 | immediately and in plain view near the backpack paraphernalia

18 | which is consistent with drug dealing.

19 |       THE COURT: Is that before they enter the car?

20 |       MR. DePORRE: No, that's -- but if they were to be

21 | confined to a search of Mr. Hutchins' wingspan, they would

22 | readily see drug paraphernalia consistent with drug

23 | distribution.

24 |       THE COURT: Can you give me just one second. Can

25 | you direct me to where in the transcript that part is, that

*Motion to Suppress • July 25, 2022*

1   when they start searching, they see the drug paraphernalia in

2   plain view near the backpack?

3           MR. DePORRE:  Certainly, Your Honor.  It may take a

4   moment to find it here in the -- because we had two

5   transcripts.

6           THE COURT:  Are you referring to page 45?

7           MR. DePORRE:  Yes, Your Honor.  So at page 45, it

8   is pageID.120, line 17, they discuss -- he discusses a metal

9   tray that he observes when he first contacts the driver.  He

10  opens the driver's door and observes this metal tray, which

11  was between the driver's seat and the jam of the driver's

12  side door, and there was methamphetamine in that metal tray.

13          The investigating officer in this case,

14  Officer Fisher, understood that the metal tray could be used

15  in -- he stated that they are commonly sold in head shops,

16  gas stations, alongside pipes or rolling papers.  It is very

17  common to find them to contain drugs, most often marijuana.

18          THE COURT:  Well --

19          MR. DePORRE:  He also talked about finding

20  syringes.

21          THE COURT:  Where does he say he found the

22  syringes?

23          MR. DePORRE:  That's in --

24          THE COURT:  On page 46, that's pageID.121, you ask

25  him did he find any syringes in the car, and he says he did.

1   But does he say where he found them?

2          MR. DePORRE:  It sounds like they -- it does not

3   sound like there was a reference to the location of the

4   syringes.  There is discussion that he found butane bottles

5   commonly used to manufacture marijuana wax in the trunk of

6   the car, and I believe there was shoplifted paraphernalia

7   also in the trunk.

8          THE COURT:  Right.  What I'm focusing on here is --

9   so I'm trying to establish if Hutchins' statement to the

10  officers on the scene that Garza is a drug dealer and there's

11  a firearm in the car would authorize a search of the vehicle.

12  And one of the things you -- your answer to that was well,

13  don't just focus on Hutchins' statement that -- I understood

14  you to say that Hutchins' statement gets them at least in the

15  car reaching for the bag, and that in plain view once they do

16  that, they see drug paraphernalia that gives them additional

17  cause to do additional searching.

18          But you pointed me to this tray that's on the

19  driver's side between the driver's door and the driver's

20  seat.  Is that something that I could say was in plain view

21  when they reached in from the passenger's side to grab the

22  backpack?

23          MR. DePORRE:  I would have to look at the exhibits.

24  I think -- the general point that I was trying to make are

25  that Mr. Hutchins makes certain statements, and then during

*Motion to Suppress • July 25, 2022*

1   the course of the investigation those statements continually

2   are corroborated.  And so for -- I believe that his

3   statements alone would give officers probable cause to search

4   the entire vehicle, that's part one.  But part two, even if

5   the Court were inclined to disagree say because the defendant

6   had been recently arrested for shoplifting or for some other

7   reason, that the statements are corroborated so officers

8   weren't unreasonable in relying on Mr. Hutchins' statements.

9       And I can't pinpoint for the Court an exact

10  timeline because it wasn't really something explored on the

11  record as to what objects were found within Mr. Hutchins'

12  immediate vicinity.  What I can say is --

13      THE COURT:  But you're saying at least Hutchins

14  confesses to having stolen materials in the backpack, they

15  find stolen materials in the backpack, and so you would say

16  at that moment in your view confirmed his credibility and

17  that justifies additional reliance on what he said or

18  continued reliance?

19      MR. DePORRE:  Yes, Your Honor, yes.  And they

20  also -- he also says there's somebody else in the Meijer

21  store shoplift, and then they go into the Meijer store, and

22  they find somebody else shoplifting, and that again confirms

23  the -- Mr. Hutchins' statements.

24      The arrest of the person identified as S2,

25  Mr. Allen, is prior to the full search of the Meijer

*Motion to Suppress • July 25, 2022*

1   Grand Prix in which Officer Fisher found the nine-millimeter

2   ammunition.

3          THE COURT:  What else do you want to tell me?

4          MR. DePORRE:  I just wanted to be clear, the

5   buprenorphine sublingual tablets or tabs that are found are

6   found on Mr. Garza during that initial search.  So what we

7   have is three searches with three different types of evidence

8   in this case.  The first search is immediately upon arrest

9   officers find buprenorphine in Mr. Garza's pocket.

10          THE COURT:  I was not focused on the initial

11  seizure of Mr. Garza, that's a lot closer question so I was

12  trying to keep that out of my analysis.

13          MR. DePORRE:  I would tend to agree with the Court

14  on that, and I just wanted to make sure that the facts in the

15  record were clear regarding that.

16          I think the second seizure results in the bullet --

17  the ammunition round, and then the third search and seizure

18  is of the firearm.  So I just wanted to be precise in terms

19  of the timeline and the evidence that would flow from each

20  search.

21          THE COURT:  Okay.  Anything else, Mr. DePorre?

22          MR. DePORRE:  No, Your Honor.  Thank you.

23          THE COURT:  All right.  Thank you.

24          Mr. Longstreet, I promised you the last word.  Any

25  additional thoughts from you?

1    MR. LONGSTREET:  Yes.  I'd just like to say that

2  *Arizona v. Gant* restricts the officer's authority to search

3  the vehicle based on a search instant to arrest, and the

4  premises that the arrestee is unsecured within the reaching

5  distance of the passenger compartment when the search is

6  conducted.  And two, there is reasonable belief that the

7  evidence relevant to the crime of arrest will be found in the

8  vehicle.

9    So I think the Court's application that Hutchins'

10  statement is enough to search the car is overly broad in that

11  the purpose of the arrest was not to find a gun and drugs,

12  the purpose of the arrest was to stop shoplifting.  And to

13  apply that particular standard the Court is looking at in the

14  transactional sense will be -- would be an overbroad

15  application of the rule in that the search that was -- or the

16  search that would be allowed would be for the fruits of

17  shoplifting, not firearms because a snitch decides he wants

18  to tell on somebody else because he just got caught.  I think

19  that would be an overbroad application.  That would be my

20  only answer to the Court's suggestion, and that it's an

21  overbroad application pursuant to *Arizona v. Gant*.

22    THE COURT:  Thank you.  I appreciate that argument.

23    Before I walk through my ruling, I want to say I

24  don't believe *Gant* to be the controlling precedent with

25  respect to how I'm seeing this case.  I'm not suggesting that

1  the search of the vehicle was authorized as a search incident

2  to an arrest.  I think what *Gant* is talking about is when

3  there's a valid arrest and somebody's trying to use the

4  arrest as the basis to get into the car, that's the limit

5  that I understand *Gant* to be talking about.

6       I am -- I'm looking at something entirely separate

7  which is the vehicle exception to the warrant requirement

8  that I don't understand to be necessarily tied to or

9  dependent on the Search Incident to Arrest Doctrine.

10       Let me walk through how I see it.  Again, the

11  comments have been very helpful, and I want to take it in

12  terms of steps.

13       So the way I see this case is Officer Fisher

14  receives information from Ms. Monpos that there is somebody

15  engaged in shoplifting in the Meijer store.  It's a white

16  person wearing sweatpants.  The person is interdicted by

17  Meijer personnel, loss prevention personnel.  They make

18  contact with him.  He relinquishes some materials but will

19  not allow them to look in the backpack.  He leaves.  They

20  watch him get into a white car.  The person that gets into

21  the white car does not match the description of Mr. Garza.

22       At that point, Officer Fisher approaches the white

23  car and takes Mr. Garza out and puts him in handcuffs.  I'm

24  not ruling for purposes of my determination on the motion

25  that that was a valid contact with Mr. Garza or that

1   Mr. Garza was validly arrested. I don't think that the

2   validity of the seizure here depends on Mr. Garza being

3   validly arrested for the reasons that I'm going to give.

4           After the contact with Mr. Garza, Mr. Fisher's

5   colleague -- I can't place his name at the moment here -- has

6   contact with I guess it's Sergeant Johnson. Gets

7   Mr. Hutchins out of the car -- out of the back seat of the

8   car. There's yet been no search of the vehicle. And at that

9   point Mr. Hutchins, on page 37 of the transcript -- this is

10  pageID.112 of Docket No. 22. At that point Mr. Hutchins

11  admits that he was stealing from the store, he admits that he

12  still has stolen merchandize in his backpack in the vehicle.

13  He identifies Mr. Garza as a drug dealer, and states that

14  there was a firearm in the vehicle.

15          I ultimately conclude that Mr. Hutchins' statement

16  supports probable cause under the vehicle exception to the

17  warrant requirement to search the vehicle for a firearm.

18          As an initial matter, Mr. Hutchins' statement is at

19  least in part against his interest. He confesses to having

20  done the stealing. He confesses to having merchandize still

21  in his car. Now, certainly the part about Mr. Garza and the

22  firearm is not against his interest but the fact that he does

23  make statements against his interest I think supports a

24  finding of some credibility. Also he's -- he's certainly not

25  an anonymous person giving information about probable cause;

*Motion to Suppress • July 25, 2022*

1    he's standing right there in front of the officers.

2            And then I think Mr. DePorre makes another

3    important point, that also before the search of the vehicle

4    begins Mr. Hutchins says that there's a third individual in

5    the store committing shoplifting, and the police confirm that

6    aspect of Mr. Hutchins' story before beginning the stop, but

7    I want to make sure I give the cite to that.

8            On page 40 of the transcript, Docket No. 22,

9    pageID.115, Officer Fisher testifies that the third suspect

10   was secured in Sergeant Johnson's patrol car and at that

11   point the inventory search began.  So I think Mr. DePorre

12   makes a fair point when he indicates that before the search

13   of the vehicle begins another aspect of Hutchins' story has

14   been corroborated.

15           And then once the officers start conducting the

16   search they find the stolen batting gloves from Meijer, and I

17   think that confirms yet another part of Mr. Hutchins' story.

18           So if, even assuming arguendo, that out of the gate

19   that officers only had probable cause based on Hutchins'

20   statement to search the backpack, once they confirm that he's

21   accurately admitted stealing stuff and that it's in the

22   backpack, I think that gives them an additional basis to keep

23   going based on his statement that there's a firearm in the

24   car.

25           But I want to be clear that in my view, even before

*Motion to Suppress • July 25, 2022*

1    the officers start their search, I believe Hutchins'

2    statement under the totality of the circumstances gave them

3    probable cause to search the vehicle -- the entire vehicle

4    for a firearm.

5         In the course of that search that I believe was

6    permissible, they find a number of items of contraband.  They

7    find the methamphetamine.  They find suspicious digital

8    scales.  They find the butane.  And at that point I believe

9    they have a basis to interact with Mr. Garza as the driver --

10    as the driver of the car to determine whether the license

11    plate of the car is valid, to determine whether Mr. Garza has

12    a valid license, and that line of inquiry, which again I

13    believe is permissible, leads them to conclude that he does

14    not.  At that point I believe the officers lawfully may and

15    do take the vehicle into custody and tow it and seize it to

16    the tow yard.

17         After it's towed, the officers conduct an

18    additional interview with this gentleman named Mr. Allen, and

19    Mr. Allen tells them during his interview that he's a heroin

20    user, that he was stealing on behalf of Mr. Garza to pay him

21    back for some heroin, I believe.  And he indicates that while

22    he's not certain Mr. Garza had a gun, he saw Mr. Garza prior

23    to the trip to Meijer open the hood of the car and put

24    something in the engine compartment and that it may have been

25    a gun.  This is on Docket No. 22, pageID.129 and 130.

*Motion to Suppress • July 25, 2022*

1    And I believe that when you read Mr. Allen's

2  statements in conjunction with the earlier statements by

3  Mr. Hutchins, at that point again in my view the police

4  already had probable cause to search the vehicle for a

5  firearm, but at that point I believe they have probable cause

6  to search again under the hood, so the vehicle exception

7  comes into play.

8    And under *Florida v. Meyers*, even though the

9  vehicle has been towed to a tow yard and impounded, and even

10  though Mr. Garza is not able to drive it away at that point,

11  clearly Florida v. Meyers says the vehicle exception would

12  authorize another warrantless search of the vehicle in the

13  tow yard where there is probable cause, and for the reasons

14  I've stated I believe that the statements of Hutchins and

15  Allen provide probable cause for the second search to search

16  under the hood.  And so I think that this path forward makes

17  suppression inappropriate here because I think there's a

18  basis for each step in the analysis.

19    But Mr. Longstreet's made some serious arguments

20  that perhaps Mr. Hutchins' statements on the scene were not

21  sufficient to support probable cause to search the vehicle

22  without a warrant.  If Mr. Longstreet is right -- I

23  respectfully disagree with him, but he's a wonderful lawyer

24  and he's made some serious arguments.  Even if he were right,

25  I would not suppress the evidence here because I think that

*Motion to Suppress • July 25, 2022*

```
 1   under Herring this is not a case where the value of
 2   suppression -- where the deterrent value of suppression
 3   outweighs the costs.
 4        I think that if the officers made a mistake in
 5   determining that the Hutchins' statements were enough, or if
 6   those statements were not enough to establish probable cause,
 7   it would still be a good-faith mistake within the realm of
 8   reasonable disagreement, and so I wouldn't think that
 9   suppression was appropriate under Herring on the facts of
10   this case.
11        Now, I want to be clear, I may see things
12   differently if the Hutchins' interactions were not part of
13   this case.  I think that Mr. Longstreet raised a number of
14   very serious concerns about the initial interaction with
15   Mr. Garza, but the path that I see through this evidence is
16   one that doesn't depend in anyway on the initial interactions
17   with Mr. Garza as having been lawful.  So for those reasons I
18   am going to deny the Motion to Suppress.
19        Again, thanking Mr. Longstreet for really
20   outstanding work in framing the issue and raising it.  And
21   thank you, Mr. DePorre, also for the very helpful input from
22   the government in working may way through these issues.
23        So the next step I guess would be to set a plea
24   cut-off and a trial date.  Is that the next step?
25        MR. DePORRE:  Yes, Your Honor.
```

1          THE COURT:  All right.  Do you guys want to work

2   with Ms. Monda to find a time and date that works for

3   everybody?  Does that make the most sense for you,

4   Mr. DePorre?

5          MR. DePORRE:  It does.

6          THE COURT:  Mr. Longstreet, does that work for you?

7          MR. LONGSTREET:  I'm sorry.  Say that one more

8   time, please.

9          THE COURT:  Yeah.  So it seems to me the next steps

10  would be to set a final pretrial conference, a plea cut-off,

11  a final pretrial conference and a trial date, if necessary.

12  So my thought was that you guys could work with Ms. Monda off

13  the record to find those dates.

14          MR. LONGSTREET:  I think that would be sufficient.

15          THE COURT:  Anything else for you, Mr. Longstreet?

16          MR. LONGSTREET:  Not at this time.

17          THE COURT:  Mr. DePorre.

18          MR. DePORRE:  No, Your Honor.  Thank you.

19          THE COURT:  Okay.  Thank you very much.  We're

20  adjourned.

21          THE CASE MANAGER:  All rise.  Court is in recess.

22          (Proceedings concluded at 12:00 p.m.)

23                    _   _   _

24

25

1   C E R T I F I C A T I O N

2          I, Robert L. Smith, Official Court Reporter of the

3   United States District Court, Eastern District of Michigan,

4   appointed pursuant to the provisions of Title 28, United

5   States Code, Section 753, do hereby certify that the

6   foregoing pages comprise a full, true and correct transcript

7   taken in the matter of USA vs. Garza, Case No. 21-20405, on

8   Monday, July 25, 2022.

9

10

11                              *s/Robert L. Smith*
                                Robert L. Smith, RPR, CSR 5098
12                              Federal Official Court Reporter
                                United States District Court
13                              Eastern District of Michigan

14   Date:  07/22/2023
15   Detroit, Michigan

16

17

18

19

20

21

22

23

24

25