```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3                            —   —   —

     UNITED STATES OF AMERICA,
 4
                Plaintiff,
 5
      v.                                 Case No. 21-20405
 6
     NOE GARZA,                          Hon. Matthew F. Leitman
 7
                Defendant.
 8    _____/

 9                         SENTENCING HEARING

10            BEFORE THE HONORABLE MATTHEW F. LEITMAN
                     United States District Judge
11            Theodore Levin United States Courthouse
                     231 West Lafayette Boulevard
12                         Detroit, Michigan
                      Monday, March 27, 2023
13

14    APPEARANCES:

15    For the Plaintiff:      JULES M. DEPORRE
                              UNITED STATES ATTORNEY'S OFFICE
16                            600 Church Street
                              Flint, MI 48502
17                            (810) 766-5177

18
      For the Defendant:      CHARLES O. LONGSTREET, II
19                            LONGSTREET LAW FIRM, PLLC
                              18971 Livernois
20                            Detroit, MI 48221
                              (313) 288-0103
21

22

23

24
                To obtain a copy of this official transcript, contact:
25                Robert L. Smith, Federal Official Court Reporter
                  (313) 234-2612 • robert_smith@mied.uscourts.gov
```

TABLE OF CONTENTS

MATTER                                                          PAGE

SENTENCING HEARING
Objections to the Presentence Report................ 8
Allocution by Mr. Longstreet........................17
Allocution by Mr. DePorre...........................20
Sentence of the Court...............................35

1    Detroit, Michigan

2    Monday, March 27, 2023

3    at about 12:05 p.m.

4                              —   —   —

5              (Court, Counsel and Defendant present.)

6              THE CASE MANAGER:  All rise.

7              The United States District Court for the Eastern

8    District of Michigan is now in session, the Honorable

9    Matthew F. Leitman, United States District Judge, presiding.

10             You may be seated.

11             The Court calls Case No. 21-20405, United States of

12   America v. Noe Garza.

13             Counsel, please state your appearances for the

14   record.

15             MR. DePORRE:  Good afternoon, Your Honor.

16   Jules DePorre on behalf of the United States.

17             THE COURT:  Good afternoon.  Welcome.

18             MR. LONGSTREET:  Good afternoon.  Attorney Charles

19   Oliver Longstreet, II, on behalf of Noe Garza.

20             THE COURT:  Good afternoon.  I see, Mr. Garza, you

21   are with us as well.  Good afternoon to you.

22             THE DEFENDANT:  Good afternoon, Your Honor.

23             THE COURT:  We are here for sentencing following

24   Mr. Garza's conviction on three counts at trial.

25             Mr. Longstreet, let me start with you.  Are you and

1    Mr. Garza ready to proceed with sentencing?

2            MR. LONGSTREET:  The defense is prepared to

3    proceed.

4            THE COURT:  Mr. Longstreet, have you and Mr. Garza

5    had a sufficient opportunity to review the presentence

6    investigation report prepared by the probation department in

7    this case?

8            MR. LONGSTREET:  I have thoroughly gone over the

9    presentence investigation report.  I filed proper objections.

10   However, I did not have the opportunity to go over the

11   presentence investigation report with Mr. Garza.

12           THE COURT:  I lost you there.

13           MR. LONGSTREET:  I was speaking really fast.

14           THE COURT:  Can you slow down?

15           MR. LONGSTREET:  I can.  I have thoroughly gone

16   over the presentence investigation report.  I have filed all

17   the proper objections.  However, I have not had the

18   opportunity to thoroughly go over the presentence

19   investigation report with Mr. Garza.

20           THE COURT:  Okay.  Then we probably can't go ahead

21   today if you haven't had the opportunity to review the report

22   with Mr. Garza.  Do you want to review it with Mr. Garza in

23   the lockup?

24           MR. LONGSTREET:  If he would like that.

25           THE COURT:  Mr. Garza, what are your thoughts?

*Sentencing Hearing • March 27, 2023*

```
 1            THE DEFENDANT:  I would very much like that.
 2            THE COURT:  Now, the other -- Mr. Garza, you don't
 3    have to accomplish this today.  I want to make sure you guys
 4    have enough opportunity to review it together.  Do you want
 5    to see if you have enough time in the lockup and then let me
 6    know?  Or what do you guys want to do?  Or just adjourn this?
 7            MR. LONGSTREET:  I don't have anything to do until
 8    7:00 p.m.
 9            THE COURT:  Mr. Garza, what are your thoughts?
10            THE DEFENDANT:  I think we could review it before
11    we proceed today.
12            THE COURT:  Mr. DePorre, are you okay with that?
13            MR. DePORRE:  I think so, Your Honor.  I didn't
14    want to pull out my cellphone but if I could just check?
15            THE COURT:  Sure.  I promise not to have you
16    detained for the next 15 seconds.
17            MR. DePORRE:  It's Judge Lawson I'm actually
18    looking over at and nervous about.  That sounds find, I'm
19    available the rest of the day.
20            THE COURT:  Okay.  Why don't we -- I have reviewed
21    this presentence report this morning, it's not that long.
22    Why don't we tentatively plan to come back in an hour.  I
23    should ask the marshals, does that work for you guys?
24            UNIDENTIFIED MARSHAL:  Your Honor, I do know the
25    two of us have a 2:00 hearing just down the hall.  I can
```

*Sentencing Hearing • March 27, 2023*

**6**

1  check and see if maybe after that 2:00 is done we could bring

2  him back up.

3          THE COURT:  What's the 2:00, do you know?

4          UNIDENTIFIED MARSHAL:  It is a Judge Michelson

5  matter, a sentencing on another hearing over there.

6          THE COURT:  Okay.  Well, let's do this, let's

7  tentatively plan on coming back at 2:30, and I will ask

8  Michelson what's going on, and we will communicate with you

9  guys.  That will give you guys -- by you guys I mean

10  Mr. Longstreet and Mr. Garza -- about an hour and 15 minutes

11  to go over things.  When we come back you will let me know if

12  that was not enough, and if it's not enough we'll adjourn it.

13          I want to make crystal clear nobody is being rushed

14  into sentencing today, and we will only go ahead if

15  Mr. Longstreet and Mr. Garza both independently conclude that

16  they have had enough time to review the presentence report.

17          (An off-the-record discussion was held at

18          1:10 p.m.)

19          THE COURT:  Why don't we tentatively plan on 3:00

20  because Judge Michelson's 2:00 is a change-of-plea hearing,

21  and we are short on deputy marshals.

22          MR. LONGSTREET:  3:00 is fine with the defense.

23          MR. DePORRE:  Thank you, Your Honor.

24          THE COURT:  Does that still work for you,

25  Mr. DePorre?

```
 1              MR. DePORRE:  Yes, it does.
 2              THE COURT:  I'm going to run back, call
 3   Judge Lawson and have you arrested.  Other than that, I will
 4   see you at 3:00.
 5              THE CASE MANAGER:  All rise.  Court is in recess.
 6              (At 1:11 p.m. court recessed.)
 7                          —   —   —
 8              (Court reconvened at 3:10 p.m.; Court, Counsel and
 9              Defendant present.)
10              THE CASE MANAGER:  All rise.  Court is in session.
11              THE COURT:  Please be seated.
12              It is about 3:10.  We have been on a break just shy
13   of two hours.
14              Mr. Longstreet, before we took the break, the idea
15   was for you and Mr. Garza to have an opportunity to review
16   the presentence investigation report.  Have you guys now had
17   a sufficient opportunity to do that?
18              MR. LONGSTREET:  I believe we have.
19              THE COURT:  Mr. Garza, do you agree?
20              THE DEFENDANT:  Yes, sir.
21              THE COURT:  Mr. Garza, do you want to proceed with
22   the sentencing today?
23              THE DEFENDANT:  I would like to, yes.
24              THE COURT:  Okay.  All right.  Then we will do
25   that.
```

1    So, Mr. Longstreet, you have indicated that you and

2    Mr. Garza had a sufficient opportunity to review the report.

3    I see in the draft of the report that I have that you have

4    raised one objection, and I will take that up in a minute.

5    Other than the one listed in the report, do you have any

6    corrections or objections that you care to make?

7    MR. LONGSTREET:  There should have been more than

8    one objection because I objected to everything involving the

9    arrest in Burton at the hotel which included multiple

10   paragraphs.  However, there are additional objections.  The

11   defense respectfully objects to line 13 --

12   THE COURT:  Let's -- why don't we just go through

13   one at a time.  I can tell you the report that I have

14   indicates that the only objection is to page 8, paragraph 29.

15   But I'm willing to go slow and go through whatever else you

16   want to talk about.  Why don't we just go through in

17   chronological order in the report and start with the

18   beginning and you tell me everything that you object to.

19   MR. LONGSTREET:  Starting at page 5, line 13, this

20   involves an arrest that was not litigated at the trial.  This

21   is another incident in which the defense believes that there

22   was --

23   MR. DePORRE:  Your Honor, I apologize for

24   interrupting Mr. Longstreet.  Mr. Longstreet had filed

25   objections to a preliminary report.  The government concurred

1  in a number of those objections.  There was a revised report

2  that was sent out.  I believe that the paragraph 13 that he's

3  quoting from is the original preliminary report and not the

4  revised report.  The revised date of the report --

5          THE COURT:  I have a revised date of February 24th,

6  2023.

7          MR. DePORRE:  Correct, Your Honor.

8          THE COURT:  Do you have that one, Mr. Longstreet?

9          MR. LONGSTREET:  I don't have the new copy.  I only

10  have the first one which I made objections to, but I presume

11  that based on the new report my objections were sustained as

12  the government agreed and they from removed from the report.

13          MR. DePORRE:  I have an extra copy, if I could pass

14  it to Mr. Longstreet?

15          THE COURT:  You have an extra copy of the --

16          MR. DePORRE:  Of the revised PSR.

17          THE COURT:  Do you happen to have a copy of the

18  original one as well?

19          MR. DePORRE:  That would be a lot to ask; no, I

20  don't.

21          THE COURT:  Okay.  So, Mr. Longstreet, here's my

22  understanding, and I'm certainly not in a position to

23  independently vouch for this, but my understanding is that in

24  the revised report, which is what I have, listed one

25  objection.  So what I would assume is that that is the only

 1   outstanding objection that wasn't resolved in your favor.

 2   But just if you want to be safe, I don't mind going through

 3   everything that you objected to just to make sure it is not

 4   in here.

 5           MR. LONGSTREET:  Your Honor, I believe the revised

 6   copy doesn't have these particular items in there.  I'm okay

 7   with them but there are additional --

 8           THE COURT:  Can you pull the microphone a little

 9   closer?

10           MR. LONGSTREET:  Sure.  There are additional

11   objections that Mr. Garza wishes to make --

12           THE COURT:  Okay.

13           MR. LONGSTREET:  --including line 12 as one of the

14   firearms listed in this was involved in the Burton incident

15   and should not be in this report.

16           THE COURT:  Okay.  Can you give me a paragraph

17   number?

18           MR. LONGSTREET:  Paragraph 29, page 8.

19           THE COURT:  On page 8 I don't have paragraph 29.

20   Paragraph 29 in mine refers to "adjustment for obstruction of

21   justice, none."  I don't know what paragraph you are --

22           MR. LONGSTREET:  Can I see your updated report?

23           THE COURT:  Just so our record is clear, the report

24   that I'm referring to -- what I'm talking about what is in

25   front of me is Docket No. 54.

1    MR. LONGSTREET:  Very well.  I will be referring to

2   the new report, which will make it paragraph -- page 7,

3   line 26.  It mentions the Smith & Wesson .38 special, and

4   that Smith & Wesson .38 special was involved in the Burton

5   incident.  That's not an issue that was litigated in this

6   case and thus I believe it would be improper also.  The

7   defense believes that the firearm was found based on a

8   violation of the Fourth Amendment he does not have the right

9   to give the police a proper -- police permission to enter

10  into a hotel room.  I believe the government agreed,

11  dismissed those charges, and did not move forward with that.

12  So I believe that particular mention of the Smith & Wesson

13  .38 special should not be a part of this report.

14          THE COURT:  Mr. DePorre.

15          MR. DePORRE:  No objection, Your Honor.

16          THE COURT:  All right.  So how would you have --

17  you would eliminate the words "and a Smith & Wesson .38

18  special caliber revolver, model 442, serial number BPM7760"

19  from the report?

20          MR. LONGSTREET:  That's correct.

21          THE COURT:  So I will delete the words starting in

22  this paragraph 26 starting with "and" and ending in

23  "BPM7760."  So paragraph 26 now reads, "As a firearm (a Ruger

24  EC9 pistol with an obliterated serial number), was possessed

25  in connection with another felony offense (drug trafficking),

1    four levels are added." And then there is a cite to

2    USSG §2K2.1(b)(6)(B). That's how it reads now.

3           MR. LONGSTREET: The defense again objects. I

4    don't believe -- I believe he was charged with possession

5    with intent to deliver -- excuse me, never mind. We still

6    object to the Ruger being mentioned as we didn't believe that

7    should be counted either, but I believe it is being counted

8    twice in paragraph 25 and 26.

9           THE COURT: I just want to make sure I understand

10   the objection. You are suggesting here -- or the basis of

11   your objection is that the four points in paragraph 25 are

12   effectively duplicative of the four points in 26?

13          MR. LONGSTREET: That's correct.

14          THE COURT: Let me think out loud with you and get

15   your reaction. My understanding is that the four points that

16   are assessed in paragraph 25 are for the partially

17   obliterated serial number, and that the four points in

18   paragraph 26 are for the possession in connection with

19   another felony offense, and while paragraph 26 references the

20   obliterated serial number, my understanding is that the

21   assessment of four points in paragraph 26 doesn't turn on the

22   obliteration of the serial number whereas the assessment of

23   the four points in 25 does.

24          MR. LONGSTREET: Which would go to the possession

25   with intent to deliver Suboxone.

1        THE COURT:  Was that a question or statement?

2        MR. LONGSTREET:  A question.

3        THE COURT:  I'm assuming that the drug trafficking

4  offense in paragraph 26 is the -- I'm sorry, the reference to

5  another felony offense in paragraph 26 is to the possession

6  with intent to distribute the Suboxone.

7        MR. LONGSTREET:  There is no legal objection I can

8  make.

9        THE COURT:  Okay.  Do you then have any other

10  objection you want to make with respect to 25 or 26?

11        MR. LONGSTREET:  No.

12        THE COURT:  Just so our record is clear, are you

13  saying that you no longer have a basis to object to the four

14  points assessed in 25 and the four points assessed in 26?

15        MR. LONGSTREET:  No legal objection, no.

16        THE COURT:  So you are agreeing with me?

17        MR. LONGSTREET:  I am.

18        THE COURT:  Okay.  Thank you.  What next,

19  Mr. Longstreet?

20        MR. LONGSTREET:  Defendant objects to line 91 as he

21  believes he has not been --

22        THE COURT:  Hold on.  Let me catch up.  So

23  Paragraph 91 refers to federal benefits.

24        MR. LONGSTREET:  That's correct.  He believes he

25  has not been previously convicted of three prior drug

1  offenses.

2            THE COURT:  Mr. DePorre, do you have any --

3            MR. DePORRE:  If I could just have a moment, Your

4  Honor?

5            MR. LONGSTREET:  There's two listed in the report,

6  not three.

7            PROBATION OFFICER:  Your Honor, Cody Bellamy on

8  behalf of the Probation Department.

9            For clarity, paragraph 91 reads under Count 3, "The

10  defendant, having been convicted of a third or subsequent

11  drug distribution offense..."  That references he has two

12  prior drug distribution offenses, and this offense being his

13  third.

14            THE COURT:  And so --

15            MR. LONGSTREET:  You've got two.

16            THE COURT:  -- the two priors would be, if I'm

17  reading this correctly, is it --

18            PROBATION OFFICER:  The Seventh Circuit Court,

19  Docket No. 15 --

20            THE COURT:  Which paragraph are you referring to?

21            MR. DePORRE:  Judge, if I may?  Jules DePorre.

22            THE COURT:  Go ahead.

23            MR. DePORRE:  Paragraph 39 contains two delivery

24  convictions; one for delivery, manufacture of Vicodin, and

25  the other for delivery/manufacture of morphine.  They were in

```
 1    one case but for I think the federal benefits -- so under
 2    the sentencing guidelines they would be counted as one
 3    conviction -- or one sentence for calculation of the
 4    guideline range, but for calculation of federal benefits
 5    eligibility I really don't know how those are counted but I
 6    do know those are two separate counts he has been convicted
 7    of, two separate delivery counts.
 8                THE COURT:  Is this something that goes into the
 9    judgment that I check?
10                MR. DePORRE:  Not that I'm aware of.
11                THE CASE MANAGER:  You can, but we usually do not.
12                THE COURT:  I assume whether I check it or not
13    isn't determinative of this point; is that correct?
14                PROBATION OFFICER:  Yes, Your Honor.  You do have
15    the ability to order that the defendant now become
16    permanently ineligible of all federal benefits but that would
17    be totally left to the discretion of the Court.
18                THE COURT:  All right.  Well, with respect to your
19    objection, Mr. Longstreet, do you want to add in at the end
20    of paragraph 91, defendant disputes that he's been convicted
21    of a third or subsequent drug distribution offense.
22                MR. LONGSTREET:  Yes.
23                THE COURT:  Does that satisfy you?
24                MR. LONGSTREET:  It does.
25                THE COURT:  Mr. DePorre, does that satisfy you?
```

1    MR. DePORRE:  It does, Your Honor.

2         THE COURT:  I do not intend to include in my

3    judgment some sort of disqualifying language permanently

4    disqualifying him from federal benefits.

5         Mr. Longstreet, what's next?

6         MR. LONGSTREET:  Mr. Garza objects to paragraph --

7    is that all the objections?

8         THE DEFENDANT:  Yes.

9         MR. LONGSTREET:  Is that all of them?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Mr. Garza, do you have any additional

12    objections?

13         THE DEFENDANT:  No, Your Honor.

14         THE COURT:  All right.  Mr. Longstreet, the one

15    that is in my report that I want to make sure we don't miss

16    is -- I guess we covered it, but it is paragraph 29 of the

17    four points for obliterated serial number.

18         Mr. DePorre, do you have any objections to the

19    presentence report?

20         MR. DePORRE:  No, Your Honor.

21         THE COURT:  Mr. Longstreet, the Probation

22    Department has calculated the guideline range as 140 to

23    175 months.  I know you are asking for a much lower sentence

24    than that, but do you agree as a purely technical matter

25    given how I have resolved your objections to the guidelines

1    that that is an accurate calculation?

2                MR. LONGSTREET:  Yes.

3                THE COURT:  Mr. DePorre, do you concur in that

4    calculation?

5                MR. DePORRE:  Yes, Your Honor.

6                THE COURT:  Okay.  Then I will adopt the

7    presentence investigation report as written with the one

8    change -- or two changes that I discussed here with

9    Mr. Longstreet on the record.  I will find that the facts set

10   forth in the presentence report are true including those that

11   were used to facilitate the calculation of the guidelines

12   range.  I will find that the correct guidelines calculation

13   is a total offense level 28, criminal history category VI,

14   for a guideline range of 140 to 175 months.

15                I have received and reviewed sentencing memos from

16   both counsel.  Thank you very much for those.

17                What I would propose to do now is to hear first

18   from Mr. Longstreet, then from Mr. Garza if he wishes to

19   speak to me, and then from Mr. DePorre.

20                Mr. Longstreet, do you mind coming to the podium?

21                MR. LONGSTREET:  Sure.  Your Honor, we are here

22   today for a sentencing on possession of -- possession of a

23   firearm by a felon, possession with intent to deliver

24   Suboxone, which is a drug used to treat heroin addiction, and

25   possession of a firearm with an obliterated serial number.

 1              Although my client was convicted by a jury, we

 2     still find rather questionable the facts in the case without

 3     diminishing my client's acceptance of responsibility.  We

 4     have three people in a car with a gun underneath the hood of

 5     a car.  There is no actual possession.  The allegation here

 6     is constructive possession with no criminality attached.  My

 7     client was not a danger to the public at the time he

 8     allegedly possessed this firearm.  This firearm was only

 9     discovered after it was pulled to the side, trunk open,

10     battery removed, and then they could get to a firearm which

11     tells me that the firearm was not readily accessible to

12     Mr. Garza at the time.  Also, even though the jury found him

13     guilty of possession of a firearm, it is still questionable

14     whether that firearm was his or not.  There was no evidence

15     that my client's fingerprints were on the firearm.

16              THE COURT:  Mr. Longstreet, let me jump in here for

17     a second.  As I think I mentioned to you previously, I

18     thought you did a wonderful job defending Mr. Garza at trial

19     and a wonderful job trying to spotlight for the jury areas

20     where the jurors should have doubt whether this gun was

21     Mr. Garza's.

22              But for purposes of sentencing I want to share my

23     personal view.  I have absolutely no doubt, zero, that this

24     gun was Mr. Garza's.  I'm a hundred percent confident in the

25     jury's verdict.  You did a great job trying to create doubt,

1  nobody could have done more than you, but I'm a

2  hundred percent satisfied this is his gun.

3       MR. LONGSTREET:  Very well.  If the Court is

4  satisfied this is his firearm, then I take this position:

5  Even if it was -- even if it is his firearm, it wasn't in the

6  possession that he was going to use it.  He was no danger to

7  anybody with it.  He didn't try to use it against anybody.

8  He didn't possess it at the time.  At this point there is

9  really no showing that he did anything other than -- illegal

10 other than have it underneath the hood of a car where it

11 wasn't accessible.  He wasn't a danger to the public at the

12 time.  He was in a parking lot and was uninvolved with the

13 crime that got him arrested in the first place.

14       THE COURT:  Uninvolved other than sending the guys

15 in there to steal for him to pay back a drug debt.

16       MR. LONGSTREET:  Well, that's what they said but

17 that's not necessarily what we believe happened.  My client

18 took two people to the store to go grocery shopping from what

19 he understood, and they went inside and started stealing.  At

20 that point they had all the motive in the world to lie and

21 say we're in here stealing for this guy because one of them

22 was a carjacker and the other one has other issues, both of

23 them were heroin addicts, and they both of them were in there

24 stealing, so they had all the reason in the world to come in

25 here and point the finger to him.  So they can come in here

```
 1    and say, yes, it was his firearm or they could say a lot of
 2    different things but I don't think their credibility should
 3    go that far, and the Court should not -- that the only thing
 4    I think the Court should consider at this point is that there
 5    was constructive possession of a firearm very far away, not
 6    accessible to him, he wasn't a danger to the public at the
 7    time, he wasn't doing anything at the time other than sitting
 8    in a car, and so to ask somebody to send someone to prison
 9    for 10, 15, 14 years for a firearm that is really no danger
10    to anybody at the time he has it we believe is unjust, and
11    because of that we are asking for a five-year sentence.
12              Thank you.
13              THE COURT:  Thank you, Mr. Longstreet.  I
14    appreciated your thoughts.
15              Mr. Garza, this is your opportunity to speak
16    directly to me.  You are not required to say anything, and I
17    certainly won't hold it against you if you don't, but if you
18    would like to say something I would listen carefully.  Would
19    you like to speak to me, sir?
20              THE DEFENDANT:  No, Your Honor.
21              THE COURT:  Okay.  Thank you.
22              Mr. DePorre, your thoughts?  Do you mind coming to
23    the podium?  And do you mind if I start with a question?  You
24    don't have to answer that because I'm just going to do it, so
25    let me start.
```

```
 1              Mr. Longstreet makes a couple primary points in his
 2      sentencing memo, one that he emphasized again today, which
 3      was that given the location of the gun relatively speaking
 4      the gun didn't pose a threat, that it would take quite an
 5      effort by Mr. Garza to get the gun, and that's at least to
 6      some extent a mitigating feature of the possession.  Do you
 7      disagree with that?
 8              MR. DePORRE:  I don't disagree.  I agree that's a
 9      mitigating factor.  It is not readily accessible.  He didn't
10      have it next to him with a round in the chamber ready to use,
11      so I do think that's mitigating.  It would take quite some
12      effort to go retrieve that gun.
13              THE COURT:  Okay.  Next question.  This is a bit
14      unusual in that the drug distribution count was for intent --
15      possession with intent to distribute Suboxone, right?
16              MR. DePORRE:  Correct.
17              THE COURT:  Mr. Longstreet made the point at trial,
18      which seems to me to be a fair one, that's an unusual drug to
19      be distributing in that it is a drug that generally folks are
20      using to get off the really nasty stuff, isn't it?
21              MR. DePORRE:  Yes.  So Suboxone is primarily used
22      as a -- for opioid use disorder treatment.  It can also be
23      used for pain for analgesic effects.
24              THE COURT:  I hear a lot about problems we have in
25      the streets with heroin and meth and crack and that stuff.  I
```

 1    don't hear a lot about Suboxone.  Is it a drug that is --

 2              MR. DePORRE:  It is frequently abused.  It doesn't

 3    have the devastating effects that say fentanyl or meth would

 4    have, but it is a drug that we see commonly converted from

 5    its proper use in a prescribed setting to street use, so it

 6    is similar in that regard to, you know, other opiates like

 7    OxyContin or Norco.

 8              THE COURT:  Is it ruining people's lives in the

 9    same way these other opioids are?

10              MR. DePORRE:  Like Norco?

11              THE COURT:  Norco, OxyContin.

12              MR. DePORRE:  No, I think those are worse.

13              THE COURT:  Okay.  Please go ahead.

14              MR. DePORRE:  Your Honor, the government did submit

15    a sentencing memorandum in this case.  We have asked for a

16    substantial custodial sentence.  We believe that's necessary

17    in --

18              THE COURT:  What is substantial?  Substantial is

19    kind of in the eye of the beholder.  If you and I were asked

20    about ten different sentences in ten different cases, we

21    might disagree in every case where the substantial number

22    lies.  Do you have a number in mind?

23              MR. DePORRE:  I don't.  I leave it to the Court's

24    discretion.  I think that it needs to be enough to accomplish

25    the factors that are set forth in the statute.  And Congress

1    has given -- Congress has given a fairly comprehensive list

2    of factors for the Court to consider, and many courts come

3    out in different ways on this.

4          I would note that looking at the sentencing data

5    that offenders that are convicted of the same guideline

6    provision, a crime that references 2K2.1, and are also

7    criminal history category of VI, and base offense level 28,

8    the average sentence in those cases both in terms of mean

9    average and median is 120 months, so that is a very lengthy

10   sentence without question.

11         And it just -- there is -- based on that -- there

12   aren't a lot of other wild departures from that range when I

13   look at sentencing data, so it does seem like that's where

14   most courts end up.

15         I would say it is important to also recognize that

16   in most instances, as the Court is aware, criminal defendants

17   plead guilty and they don't go to trial, and they accept

18   responsibility that is something that is unique in this case,

19   and it effects I think the sentence in two ways.  Number one,

20   Mr. Garza is not entitled to any credit for acceptance of

21   responsibility.

22         But I think at a more fundamental level with

23   respect to the factors that the Court has to consider, it is

24   easy when somebody comes before the Court and says I have

25   learned my lesson, I made a mistake, and I promise to do

1     better.  And it is easy to see a deterrent effect already

2     sort of in progress, that the defendant has acknowledged what

3     they have done as being wrongful, and they have made a

4     commitment to try to change their life and to try to take a

5     different approach in the future.  That's something that we

6     don't have in this case, and that's what is perhaps most

7     troubling.

8          So for that reason I -- primarily for that reason

9     but also because the defendant has engaged in dangerous

10    crimes both with guns and other assaultive crimes that don't

11    involve guns, he's engaged in drug trafficking and other --

12    you know, his drug trafficking is street-level drug

13    trafficking.  He's not, you know, the leader of the cartel.

14    He's not high up -- he's not a high-level target for the U.S.

15    Attorney's Office or a figure like that, but the arrest that

16    he was -- that occurred about a week before the Meijer arrest

17    involved a substantial amount of drugs, and not just Suboxone

18    but methamphetamine, heroin.  So the defendant is engaged in

19    significant criminal conduct that needs to be detoured, and

20    unfortunately his prior sentences have not detoured him.  And

21    the fact that he hasn't accepted responsibility before this

22    Court shows that there's an added basis for a longer, more

23    substantial sentence to effectuate deterrence and to protect

24    the public.

25              THE COURT:  Okay.  Thank you.  I appreciate those

1    arguments.

2          I want to make clear that -- and I will talk about

3    my sentence in a minute, and I understand and respect those

4    arguments, but I want to make sure that there is no mistake

5    on this record, I'm not in any way going to penalize

6    Mr. Garza for not accepting responsibility or for going to

7    trial or for persisting in his innocence.  I understand your

8    argument, but I want to be clear that under no circumstances

9    is any part of my sentence based on the notion that he

10   exercised his right to have a trial or today he's exercising

11   his right to stay silent.  I understand folks get a credit

12   when they accept responsibility but in no way am I going to

13   penalize him today for those two things.  Okay.

14          MR. DePORRE:  Thank you.

15          THE COURT:  Mr. Longstreet, I do though have a

16   couple questions that I wanted to ask you.

17          I told Mr. Garza I wasn't going to penalize him for

18   not saying anything today and I'm not going to.  But separate

19   and apart from whatever he might say, can you, as his lawyer,

20   point me to any evidence that there is a reason to believe

21   that Mr. Garza will be on a better path going forward?  And

22   here in answering this question you can persist in the

23   position that he was innocent here.  Even if he was innocent

24   here, what comfort can I have in moving forward that even if

25   this wasn't a crime in the Meijer parking lot there's some

1    reason to think that his life going forward will involve

2    gainful, lawful employment, law-abiding behavior, being a

3    constructive member of the community.  Is there any evidence

4    of that?

5            MR. LONGSTREET:  I think the best person to answer

6    that is Mr. Garza.  Mr. Garza expressed the opinion that he

7    no longer wants to be incarcerated.  He's been incarcerated

8    before.  He wasn't intending on being incarcerated this time.

9    He was in bad company.  He was a part of a -- or he is here

10   basically on a state shoplifting case that got him federal

11   time.  I don't think at the time Mr. Garza was trying to get

12   off his heroin.  He was using Suboxone to get off that.  He

13   was uninvolved in any criminal activity at the time.

14           So I think the case in and of itself shows my

15   client really didn't have any criminal intent on that

16   particular day.  Again, this is a state shoplifting case, a

17   very minor offense that turned major real fast because he's a

18   prior felon.  This is a local state case that turned federal

19   which increased the time from two years in the state court to

20   ten years or 15 years in the federal court.

21           So the question the Court has presented, is there

22   any evidence that my client is going to do any different when

23   there is no evidence that he's not --

24           THE COURT:  Well, again, to make it clear that I'm

25   not insisting that he speak or I'm not penalizing for him not

1    speaking, sometimes counsel can point me to the fact that

2    while incarcerated somebody took some classes, somebody did

3    some mentoring, something that -- anything that I can point

4    to to get some comfort level that their post-incarceration

5    life will be productive, constructive and law-abiding.

6    That's what I'm trying to get at here.  You've answered it

7    but I just want to clarify what I was looking for.

8          Here is my next question.  One of the topics that

9    each of you address in your sentencing memos are the jail

10    calls that were played during the trial.  I found those calls

11    quite disturbing in a couple regards, and I want to make sure

12    I give you an opportunity to respond.

13          The two parts of the calls that concern me the most

14    were the repeated references in here to a willingness to use

15    violence.  Mr. Garza repeatedly saying -- I have the

16    transcript -- you know, who he was going to act out violently

17    against.

18          And then the references to what he asked the

19    girlfriend to do -- or friend in order to get the money to

20    get him out on bound, and he twice directed this woman to

21    generate $500 for him by performing oral sex on men, and he

22    didn't say it as delicately as I did.  His exact words, and I

23    want to say it because it was so impactful on me as I was

24    sitting up here.  His exact words were, "Suck a dick.  I

25    don't give a fuck." was one.  And then the other one was,

1   "Get me the fuck out.  Ten dicks, suck them for 50 bucks, or

2   fucking five dicks for a hundred bucks, it's $500."

3           I don't say that for prurient value, but the

4   impression that gave me, Mr. Longstreet, was somebody that

5   does not have a lot of value and respect for fellow people.

6   And certainly when trying to assess risk to the public and

7   law-abiding future and stuff like that, those two sets of

8   comments concern me.

9           Is there anything that you can say beyond this is

10  just braggadocio or tough-guy talk or something?

11          MR. LONGSTREET:  I will need permission to release

12  confidences from my client in order to address that question.

13          THE COURT:  Okay.  Do you want to talk to him or if

14  you can't answer it now that's fine.

15          MR. LONGSTREET:  I can't answer without breaching

16  attorney-client privilege.

17          THE COURT:  Do you want to talk to him for a

18  minute?

19          MR. LONGSTREET:  I do.

20          THE COURT:  Go ahead.

21          (An off-the-record discussion was held at

22          3:43 p.m.)

23          MR. LONGSTREET:  How I would address that is that

24  my client was in a desperate situation.  However, the

25  comments about her performing oral sex acts or performing

1  oral sex acts in order to gain money was something he was not

2  serious about.

3          THE COURT:  What about the references to the

4  violence, which were even more concerning?

5          MR. LONGSTREET:  In reference to the violence, that

6  I believe was tough-guy fluff.  He was incarcerated.  There

7  was some alleged attacks on this young woman's life or

8  threats on this young woman's life.  To relieve her from what

9  he believed to be stress from that situation he was trying to

10 ensure that she was safe, that the other rival gang members

11 would not do anything to her, that he was supportive of her

12 or had her back.  That nothing would -- no danger would come

13 of her.  And his whole objective in that conversation was to

14 ensure her that these other gang rival members would not --

15 or try to -- attempt to try to comfort her in that these

16 other rival gang members would not bring her harm.

17          He was not in the position to do anything.  He has

18 remained incarcerated since that day so he could not do

19 anything.  He knew he could not do anything.  And he knew he

20 wasn't going to get out of jail no time soon.  With that

21 knowledge, he can talk all -- as they say in the

22 neighborhood, you can talk a lot of stuff but you ain't doing

23 nothing.  You can talk a whole lot when you are behind the

24 bars.  There was nothing he could do, and he knew there was

25 nothing he could do, so the only thing he can do is try to

1    make her feel comfortable.  Yeah, I'm going to beat these

2    guys up knowing that he couldn't crack a twig.

3              THE COURT:  Okay.  Thank you.  Before I get into

4    the sentencing, Ms. Ryan mentioned I need to rule on the oral

5    motion for acquittal that Mr. Longstreet raised.

6              I'm going to deny the motion.  Having sat through

7    the trial I'm confident that when all of the evidence in

8    viewed in the light most favorable to the government there

9    was more than sufficient evidence to support the jury's

10   verdicts here.

11             Okay.  Mr. Garza, when I impose sentences in my

12   criminal cases I have to consider and apply the factors set

13   forth in the sentencing statute found at Title 18,

14   United States Code, Section 3553(a), and I want to walk

15   through with you how I see those factors applying to you and

16   to this case.

17             Mr. Garza, the first factor I have to consider is

18   the nature and circumstances of the offense, and this is kind

19   of a mixed bag here.  Any possession of a firearm by somebody

20   who has been convicted of a felony is a serious matter.  Any

21   possession of a firearm in connection with the drug

22   trafficking is a serious matter.  So those parts of the

23   offense to me weigh in favor of a more serious sentence.

24             But I think there are two points that

25   Mr. Longstreet has pressed that are mitigating factors here.

```
 1   The nature of this possession, as Mr. Longstreet calls it,
 2   constructive possession, where the weapon was located not
 3   readily accessible.  I think Mr. DePorre candidly
 4   acknowledges that is somewhat of a mitigating factor.
 5           Weapons are most dangerous when they are readily
 6   accessible with a firearm with a round chambered ready to go
 7   and that can be used if the situation heats up, and that
 8   wasn't the case with you, and I have given that serious
 9   consideration.
10           The other point that I think is worth highlighting
11   here is the nature of the controlled substance.  It's not to
12   be diminished, Suboxone is a controlled substance for a
13   reason, but I think that -- this was a point that
14   Mr. Longstreet made I think effectively at trial that it's a
15   drug that's primary purpose is to get people off of the
16   really bad stuff.  And while it is subject to abuse,
17   Mr. DePorre made that point, he also candidly acknowledged
18   that it is not ripping through the community like Vicodin,
19   OxyContin, fentanyl and those things, so there is a balance
20   here.  It's a serious offense, but there are certainly
21   mitigating factors that I have considered.
22           The next factor I have to consider is your personal
23   history and characteristics.  I read in the presence report
24   that during one of your prior incarcerations -- I think it
25   was in that boot camp you earned your GED, and that's
```

 1   certainly a credit to you.  I read that your future goal is

 2   to go to welding school and develop a plan.  This is kind of

 3   what I was getting at with Mr. Longstreet, and I really hope

 4   that you do that.

 5         Mr. Garza, you are still relatively young.  I can

 6   tell you have a lot of energy, and I think the challenge for

 7   you is to focus that energy in a constructive way.  So

 8   hopefully welding can be your future.  And I have certainly

 9   and carefully considered that you do have a career goal, and

10   you have been wrestling with your own drug issues over the

11   course of your history, so I have considered that as well.

12         On the negative side, your criminal history is

13   certainly a concern, and I have factored that into the

14   sentencing decision as well.

15         But the next factor I have to consider is the

16   sentence needs to reflect the seriousness of the offense,

17   promote respect for the law, and provide just punishment.

18   Here I do think that a serious sentence is necessary to

19   reflect the overall seriousness of this offense and to

20   promote respect for the law, and to provide a sufficient

21   level of punishment for what happened.

22         The next factor I have to consider is affording

23   adequate deterrence to criminal conduct.  And likewise, here

24   I think a meaningful custodial sentence is necessary.  You

25   have had several different stints in custody, none for as

1    long as I'm going to impose here, but those haven't been long

2    enough to deter from you committing offenses, and that

3    suggests to me that a longer sentence is necessary to achieve

4    specific deterrence.

5           And likewise here I think a meaningful custodial

6    sentence is necessary to achieve general deterrence to send a

7    message to other folks up in the Flint area that there is a

8    meaning price to be paid for possessing guns and intending to

9    distribute controlled substances.

10          The next factor I have to consider is protecting

11   the public from further crimes by you.  And likewise, I think

12   that this factor requires a meaningful custodial sentence.

13   Again, having listened to these audio tapes and looking at

14   those in connection with your criminal history, I do think

15   that a meaningful sentence is necessary to achieve protection

16   of the public here.

17          The next factor I have to consider is providing you

18   with needed educational or vocational training, medical care

19   or other correctional treatment in the most effective manner.

20   I am not adding any time to your sentence to achieve that

21   goal but, Mr. Garza, it is my sincere hope that once you get

22   out of whatever county jail you are in now and you get to the

23   BOP that you really take advantage of all of the educational

24   opportunities and skill-building opportunities that they

25   offer.

1      Your prior terms of custody I think have been

2  exclusively state custody, and from my understanding there is

3  a significant difference between state time and federal time.

4  What I'm referring to here is the opportunity to really

5  develop some skills and improve your knowledge base in the

6  federal system that may not have been available in the state

7  system, and I sincerely hope that you take advantage of that

8  because I think that will help you moving forward to avoid

9  coming back and appearing before somebody like me in another

10  case.

11      I have to consider the kind of sentences available,

12  and I have done that.  I could impose statutorily if I ran

13  everything consecutive, I think it is up to 25 years, but I

14  have also carefully considered the guidelines range of 140 to

15  175 months.

16      Finally, I need to avoid unwarranted sentencing

17  disparities among similarly situated defendants.  I am going

18  to impose a sentence here that is meaningfully below the

19  guideline range here, but I don't think in doing so I'm going

20  to create a disparity that is unwarranted.  I think that the

21  sentence that I impose here is going to be strong enough to

22  send a message but is going to reflect some of the mitigating

23  factors that I mentioned earlier.

24      So ultimately my task is to impose a sentence that

25  is sufficient but not greater than necessary to achieve all

1 of the goals that I have just mentioned.  And while

2 Mr. Longstreet has asked for a sentence of 60 months, and I

3 very much respect his advocacy in asking for that, I think

4 that is not sufficient to achieve the goals of sentencing in

5 this case.

6    I think that the appropriate sentence and one that

7 in my own mind that I regard as substantial is a sentence of

8 80 months in custody here.  To me that is serious business,

9 it is a long time.  You are a young person.  It is meant to

10 be serious.  I know Mr. Garza that's substantially longer

11 than you were hoping to get today, but I want you to

12 understand that is a substantial variance below the bottom of

13 the guidelines.  The guidelines are 140 months, and I imposed

14 a sentence that's five years below the bottom of the

15 guidelines.  Again, I did that because while I do think this

16 was a serious offense, I think that the mitigating factors

17 here, how it went down, and the lack of immediate threat both

18 how you possessed the gun and the nature of the controlled

19 substances that you had, makes a sentence of 80 months

20 sufficient but not greater than necessary to achieve the

21 goals of sentencing.

22    So let me formally announce your sentence as

23 follows:  Pursuant to the Sentencing Reform Act of 1984, the

24 Court, considering the sentencing guidelines and the factors

25 contained in Title 18, United States Code, Section 3553(a),

1    hereby commits Mr. Garza to the custody of the United States

2    Bureau of Prisons for a term of 80 months custody on Counts 1

3    and 3, and 60 months custody on Count 2, all of which are to

4    run concurrent with one another.

5         Upon release from imprisonment, Mr. Garza shall be

6    placed on supervised release for a term of two years on all

7    counts to run concurrently to each other.

8         It is further ordered that Mr. Garza pay a special

9    assessment of $100 per count for a total of $300, which is

10   due immediately.

11        I will waive the imposition of a fine, the cost of

12   incarceration, and the cost of supervision due to Mr. Garza's

13   lack of financial resources.

14        Mandatory drug testing is ordered.

15        Pursuant to Title 34, United States Code,

16   Section 40702, Mr. Garza shall cooperate with the collection

17   of a DNA sample as directed by a probation officer.

18        While on supervision, Mr. Garza shall abide by the

19   standard conditions as adopted by this Court, and with the

20   following special conditions:

21        Due to the nature of the instant offense and

22   substance abuse concerns, first, Mr. Garza shall submit his

23   person, residence, office, vehicles, papers, business, or

24   place of employment, and any property under his control to a

25   search.  Such a search shall be conducted by a United States

 1    probation officer at a reasonable time and in a reasonable

 2    manner based upon a reasonable suspicious of contraband or

 3    evidence of a violation of a condition of release.  Failure

 4    to submit to such a search may be grounds for revocation.

 5    Mr. Garza shall warn any residents that his premises may be

 6    subject to searches.

 7          Mr. Garza shall submit to substance abuse testing

 8    to determine if he has used a prohibited substance.

 9          Mr. Garza shall participate in a substance abuse

10    treatment program and follow the rules and regulations of

11    that programs.  The probation officer, in consultation with

12    the treatment provider, will supervise Mr. Garza's

13    participation in the program.

14          Mr. Longstreet, do you have any questions

15    concerning any aspect of the sentence imposed?

16          MR. LONGSTREET:  I do not.

17          THE COURT:  Do you have any objections procedural,

18    substantive or otherwise to any aspect of the sentence

19    imposed beyond the positions you've already made a part of

20    the record?

21          MR. LONGSTREET:  None.

22          THE COURT:  Mr. DePorre, do you have any questions

23    concerning any aspect of the sentence?

24          MR. DePORRE:  No, Your Honor.

25          THE COURT:  Do you have any objections?

1      MR. DePORRE:  None.

2      THE COURT:  Okay.  Mr. Garza, in order to appeal

3  your conviction and sentence, you need to file a written

4  notice of appeal with the Clerk of This Court within 14 days.

5      THE DEFENDANT:  Your Honor, can I put on the record

6  notice of appeal?

7      THE COURT:  No, you need to file it in writing, but

8  I don't mind asking Mr. Longstreet to file on your behalf.

9          Mr. Longstreet, are you willing to do that?

10     MR. LONGSTREET:  No.

11     THE COURT:  You are not willing to file the notice

12 of appeal?

13     MR. DePORRE:  I don't do appeals.  I don't do

14 anything with appeals.  I mean, I could file within 14 days,

15 but I typically don't do the appeals.

16     THE COURT:  All right.  Hold on one second.

17         (An off-the-record discussion was held at

18         3:58 p.m.)

19     THE COURT:  Mr. Longstreet, how about if you file

20 it and then move to withdraw in the Sixth Circuit?

21     MR. LONGSTREET:  I will do that.

22     THE COURT:  You will do that.  Okay.  Just to be

23 clear, Mr. Longstreet, when I say 14 days from today, we are

24 going to get this judgment entered tomorrow, but you can't

25 file the notice of appeal until we enter the judgment because

1    the notice of appeal is from the judgment.  So you will see

2    the judgment pop up on your computer as an e-file, we will

3    e-file the judgment, and at that point I'm asking you to file

4    the notice of appeal on Mr. Garza's behalf.  Will you do

5    that, please?

6            MR. LONGSTREET:  Okay.

7            THE COURT:  Then will you send Mr. Garza a letter

8    confirming for him that you have filed the notice of appeal.

9            MR. LONGSTREET:  I will do that.

10           THE COURT:  Okay.  We have our forfeiture language

11   in the judgment.  I have a few other things to say but let me

12   make sure we get this in.  The judgment will include the

13   following.  Mr. Garza forfeits his interest in the following

14   property:  Pursuant to Title 18, United States Code,

15   924(d)(1) together with 28 USC 2461(C):  First, one black

16   Ruger EC9s nine-millimeter semi-automatic pistol, serial

17   number is obliterated; second, one round of nine-millimeter

18   ammunition; and third, six rounds of nine-millimeter

19   ammunition.

20           The preliminary order of forfeiture which is Docket

21   No. 58 is hereby incorporated by reference.  Any objection to

22   that, Mr. Longstreet?

23           MR. LONGSTREET:  No.

24           THE COURT:  Mr. DePorre?

25           MR. DePORRE:  No, Your Honor.  Thank you.

```
 1              THE COURT:  Mr. Longstreet, do you want to make any
 2    request in terms of recommendations that I would make to the
 3    Bureau of Prisons concerning Mr. Garza confinement?
 4              MR. LONGSTREET:  He's requesting to go to Oxford,
 5    Minnesota.
 6              THE COURT:  Mr. Garza, is that a federal prison
 7    there, do you know?
 8              THE DEFENDANT:  Yeah, Wisconsin -- my bad,
 9    Wisconsin.
10              THE COURT:  Oxford, Wisconsin is what you want me
11    to recommend?
12              THE DEFENDANT:  Wouldn't I be going to a medium or
13    low, depends --
14              THE COURT:  I have no idea.
15              MR. LONGSTREET:  The Bureau of Prisons makes that
16    decision.
17              THE COURT:  But the way it works, Mr. Garza, is I
18    can make a recommendation to them, they don't have to follow
19    it, but I can recommend that they house you in a certain
20    facility.  I don't mind doing that if you would like me to do
21    that.
22              THE DEFENDANT:  Fort Dix or Oxford, Wisconsin.
23              THE COURT:  Where is Fort Dix?
24              THE DEFENDANT:  I don't know where Fort Dix is.
25              THE COURT:  We will figure it out, but you want me
```

```
 1    to put in the judgment that I recommend incarceration either
 2    at Fort Dix or Oxford, Wisconsin?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  I will do that.
 5              Holly, anything else on your end?
 6              THE CASE MANAGER:  Not on my end.
 7              THE COURT:  Mr. Garza, let me share a couple last
 8    thoughts with you.  I think you heard me say that when you
 9    get out of your term of custody you will be on supervised
10    release.  And you've been on parole before, but I want to
11    stress to you that supervised release here is different.  Our
12    probation officers who supervise folks on supervised release
13    are really trying to help them.  They are trying to help them
14    connect them with resources to help them succeed in the
15    community.  So when you get out from serving this time, I
16    hope that you see your probation officer as a teammate and a
17    supporter who can connect with you the resources you need to
18    live the life that you want to lead doing welding or whatever
19    skills you developed in the Bureau of Prisons.
20              Mr. Garza, do you have any questions or concerns
21    about anything that happened today that you want to share
22    with me before we adjourn?
23              THE DEFENDANT:  No.
24              THE COURT:  Okay.  Anything else, Mr. Longstreet?
25              MR. LONGSTREET:  No.
```

1          THE COURT:  Mr. Longstreet, we will look for the

2     notice of appeal shortly after we get the judgment entered.

3     Thank you for that.

4          Mr. DePorre, anything else from the government?

5          MR. DePORRE:  No, Your Honor.  Thank you.

6          THE COURT:  Okay.  Thank you.  We are adjourned.

7          THE CASE MANAGER:  All rise.  Court is in recess.

8          (Proceedings concluded at 4:02 p.m.)

9                          —   —   —

10              C E R T I F I C A T I O N

11          I, Robert L. Smith, Official Court Reporter of the
      United States District Court, Eastern District of Michigan,
12    appointed pursuant to the provisions of Title 28, United
      States Code, Section 753, do hereby certify that the
13    foregoing pages comprise a full, true and correct transcript
      taken in the matter of UNITED STATES OF AMERICA vs. NOE
14    GARZA, Case No. 21-20405, on Monday, March 27, 2023.

15

16                         *s/Robert L. Smith*
                           Robert L. Smith, RPR, CSR 5098
17                         Federal Official Court Reporter
                           United States District Court
18                         Eastern District of Michigan

19    Date:  07/22/2023
      Detroit, Michigan

20

21

22

23

24

25